STATE OF LOUISIANA
v.
TOMMY D. ROWELL, SR.
No. 2008 KA 0308.
Court of Appeals of Louisiana, Fifth Circuit.
June 6, 2008.
ON APPEAL FROM THE 22ND JUDICIAL DISTRICT COURT IN AND FOR THE PARISH OF ST. TAMMANY TRIAL COURT NO. 391,588, DIVISION "A", HONORABLE RAYMOND S. CHILDRESS, JUDGE PRESIDING.
WALTER P. REED, District Attorney, Covington, LA,
KATHRYN W. LANDRY, Special Appeals Counsel, Baton Rouge, LA, Counsel for Plaintiff/Appellee, State of Louisiana.
PRENTICE L. WHITE, Louisiana Appellate Project, Baton Rouge, LA, Counsel for Defendant/Appellant, Tommy D. Rowell, Sr.
Before: WHIPPLE, GUIDRY, and HUGHES, JJ.
HUGHES, J.
The defendant, Tommy D. Rowell, Sr., was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. The defendant pled not guilty and, following a jury trial, he was found guilty as charged by a unanimous jury. The defendant filed motions for new trial and post-verdict judgment of acquittal, which were denied. The defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating one assignment of error. We affirm the conviction and sentence.

FACTS
For about a year, Kendra Talley had been having an extramarital affair with the defendant, a good friend of Kendra's husband, Thomas Talley. On December 10, 2004, the defendant, Kendra, her friend, Susan, and Susan's boyfriend, Keith Hamner, drove from St. Tammany Parish to the French Quarter. On the way there, the defendant and the others drank beer and smoked marijuana and crystal methamphetamine. In the French Quarter, they drank Hand Grenades (a mixed drink) and snorted crystal methamphetamine. They returned to the Northshore about 3:00 a.m., December 11. Keith and Susan went home, and Kendra and the defendant rode together to a Waffle House to eat. The defendant was driving a pickup truck borrowed from his mother's boyfriend.
According to the defendant's testimony at trial, while at Waffle House, Kendra told the defendant that Thomas, her husband, had anally raped her. The defendant became very angry and went to the truck. Shortly thereafter, Kendra got in the truck and again told the defendant how Thomas had raped her. The defendant drove to Kendra's house in Covington. The defendant had two handguns in the truck, a 9mm Ruger on the right side of the console and a .45 Llama on the left side of the console. When the defendant pulled into the driveway, Kendra began blowing the horn. Thomas came outside and walked toward the truck. Kendra grabbed the 9mm and shot Thomas four times through the rolled-up window of the truck.[1] Thomas fell to the ground. The defendant grabbed his .45, exited the truck, approached Thomas, and shot him twice in the head. The defendant returned to the truck alone and drove home to his trailer in Sun, Louisiana. The defendant did not call the police or an ambulance.
Within hours, police went to the defendant's trailer to arrest him. The defendant barricaded himself inside and refused to come out. Lieutenant Richard Artigue, a hostage negotiator with the St. Tammany Parish Sheriffs Office, was called in to assist. According to Lieutenant Artigue's testimony at trial, the defendant told him that he was not coming out because he had killed someone and he knew he was going to jail. During the couple of hours of negotiation, the defendant did not mention Kendra. The defendant finally came out of his trailer without incident.
Dr. Michael DeFatta, the pathologist who performed the autopsy on Thomas, testified at trial. Thomas was shot six times, sustaining wounds to his chest, head, shoulder, hip, and groin. The cause of death was multiple gunshot wounds, and the manner of death was homicide. According to Dr. DeFatta, three spent bullets were found, including a bullet found on the ground under Thomas's head. Dr. DeFatta testified that the two gunshot wounds to the head were caused by a large caliber handgun, namely larger than a 9mm, .380, or . 32 caliber handgun. Dr. DeFatta further stated that he was confident that the two head wounds were sustained when Thomas was on the ground. He also testified that it was possible that Thomas was conscious before he was shot in the head.
At trial, the State and defense counsel stipulated that the scientific analysis report prepared for this case indicated that the projectiles and casings recovered from the crime scene, the truck, and the body of Thomas were fired from the two weapons found in the defendant's trailer, namely the .45 Llama and the 9mm Ruger (model P89), and that these projectiles killed Thomas. Robert Donald, Commander of the Investigations Division of the Covington Police Department, was an investigator on this case. He testified at trial that he was not sure whether the defendant or Kendra fired the 9mm handgun.

ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues that the evidence was insufficient to support the conviction of second degree murder. Specifically, the defendant contends that the killing of Thomas constituted manslaughter because, at the time of shooting, his blood had not cooled.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585, pp. 4-5 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
Louisiana Revised Statute 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Cousan, 94-2503, p. 13 (La. 11/25/96), 684 So.2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La. 1982).
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.
In his brief, the defendant concedes that "he participated in killing the decedent." At trial, the defendant testified that, while Thomas was lying on the ground after having been shot by Kendra, he (the defendant) exited the truck with his .45 handgun, stood over Thomas, and shot him twice in the head. The fact that the defendant shot the victim twice in the head with a handgun at pointblank range indicates specific intent to kill. See State v. Ducre, 596 So.2d 1372, 1382 (La. App. 1 Cir.), writ denied, 600 So.2d 637 (La. 1992). Accordingly, the jury reasonably concluded that the defendant was guilty of second degree murder.
Guilty of manslaughter is a proper responsive verdict for a charge of second degree murder. LSA-C.Cr.P. art. 814(A)(3). Louisiana Revised Statute 14:31(A)(1) provides:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]
The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances that may reduce the grade of homicide. State v. Maddox, 522 So.2d 579, 582 (La. App. 1 Cir. 1988). Provocation is a question of fact to be determined by the jury. Thus, the issue remaining is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the mitigatory factors were not established by a preponderance of the evidence. State v. Ducre, 596 So.2d at 1384.
Having found the elements of second degree murder, the jury had to determine whether the circumstances indicated the crime was actually manslaughter. The defendant contends he was "madly in love" with Kendra and that, upon learning from Kendra that Thomas raped her, his emotions clouded his judgment, which resulted in Thomas's death. At the time he shot Thomas, according to the defendant, he was angry and intoxicated with drugs, liquor and "a quest for revenge."
Regarding the defendant's intoxication, Keith Hamner testified at trial that he had seen people "messed up" on drugs before and that the defendant, even though he had taken some drugs, did not seem out of control or exhibit any unusual signs. Also, the defendant's testimony established that, despite consuming alcohol and ingested drugs while traveling to, and while in, the French Quarter, the defendant drove to Waffle House, then to Kendra's house, and then home, all without incident. The record indicated that it was about a thirty minute drive from Kendra's house to the defendant's house in Sun.
Regarding the alleged rape of Kendra by Thomas, the State introduced into evidence at trial a CD, which contained fourteen recorded telephone conversations between the defendant and his mother while the defendant was in jail prior to trial. The conversations were played for the jury. During three different conversations, the defendant informed his mother of several mitigative theories to avoid a murder charge. The defendant suggested that he was not in control of himself, that he had a head injury from an accident, and that Kendra was "pushing" him.
The guilty verdict in this case indicates the jury concluded this was a case of second degree murder and rejected the possibility of manslaughter. Given that the defendant had to drive from Waffle House to Kendra's house, and given that Kendra had been having an extramarital affair for about a year with the defendant, the good friend of her husband, Thomas, nothing in the testimony of the witnesses or of the defendant suggests that the shooting was committed in sudden passion or heat of blood. The guilty verdict indicates the jury concluded either: (1) that the defendant's knowledge that Kendra was raped by Thomas was not sufficient provocation to deprive an average person of his self-control and cool reflection; or (2) that an average person's blood would have cooled before the defendant shot Thomas. See State v. Ducre, 596 So.2d at 1384. Further, the jury could have reasonably concluded the defendant killed Thomas so the defendant and Kendra could be together, and the averment that Kendra was raped was a fabrication.
After a thorough review of the record, we find that the evidence supports the jury's unanimous verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of second degree murder, and that the mitigatory factors of manslaughter were not established by a preponderance of the evidence. See State v. Ducre, 596 So.2datl384.
The assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Although Kendra Talley was originally named as a codefendant in the instant matter, the trial court granted the State's October 23,2007 motion to sever its prosecution against her.